IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-00350-CMA-KLM

LUIS OSORIO,

       Applicant,

v.

KEVIN MILYARD, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

       Respondents.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

Before the Court is an **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [Docket No. 4; Filed March 5, 2008] filed by Luis Osorio ("Applicant").[1] Respondents filed an Answer on March 18, 2009 [Docket No. 15] and Applicant's Traverse was filed on May 15, 2009 [Docket No. 28]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R. 72.1C, the Application has been referred to this Court for recommendation. The case has been fully briefed and is ripe for resolution.  The Court has considered the relevant pleadings, the state court record, and the applicable case law, and is sufficiently advised in the premises.  For reasons set forth below, the Court recommends that the Application be **DENIED**.

---

[1] Applicant also filed an Application for a Writ of Habeas Corpus on February 21, 2008 [Docket No. 2].  This earlier Application raises the same issues as the later filed Application.

1

I. Background and Procedural History

On June 29, 2001, Applicant was convicted in the Denver County District Court of attempted first degree murder and first degree assault. He also was subject to a mandatory sentence for committing a crime of violence. *Record* v. I at 150.[2] The facts giving rise to Applicant's convictions are the following: in August 1999, Osorio and Rhianna Eusea were employed in the fraud department at MCI. *Record* v. VI at 239-40. Shortly thereafter, they began dating and moved in together to an apartment in February 2000. *Id.* at 242-45. After that, Applicant became controlling, possessive and suspicious of her behavior, and placed a tracking system in her car. *Id.* at 246-49.

In March 2000, Applicant and Eusea became engaged, but their relationship was volatile. *Id.* at 250-51, 255. They argued frequently and Eusea would often threaten to leave Osorio. He cried and threatened to kill himself and take away everything she owned. *Id.* at 256-60. On May 26, 2000, Eusea asked Osorio to leave the apartment permanently because he had been mentally abusive. *Id.* at 263. After a number of discussions between them, Applicant agreed to move out of the apartment. *Id.* at 270.

The next day they agreed to meet to discuss the arrangements for the property in the apartment. *Id.* at 275. While Osorio was at the apartment, he pulled a switchblade out of his pocket. *Id.* v. VII at 8-9. Osorio placed the knife at Eusea's throat and she grabbed the handle, cutting her hands. *Id.* at 10. Osorio then stabbed her in the back with the knife. *Id.* The knife punctured her lung. *Id.* at 249. Osorio pulled the knife out of her back and repeatedly stabbed at her throat and stomach. *Id.* at 12-14. They wrestled on the floor and

---

[2] Volume I of the state court record consists of the documents filed in Denver County District Court regarding this case.

Eusea was able to pull the knife from her stomach and stood up. *Id.* at 14.  She had cuts all over her hands. *Id.*

At some point, Osorio began cutting himself on his arms and neck.  *Id.* at 15.  Eusea ran out to the balcony of the apartment.  He ran behind her and stabbed her in the back. *Id.* at 16.  He tried to pull her back from the balcony and stabbed her underneath her right arm. *Id.*  Eusea told Osorio that she was dying and suggested they could still "work it out." *Id.*  Osorio said that it was "too late for that" and again tried to stab her in the throat. *Id.* at 16-17. Eusea grabbed the blade of the knife with her hand, deeply cutting a finger.  *Id.* at 17.  She succeeded in climbing to the next balcony and eventually found a neighbor, who called the police. *Id.* at 18.  When the police arrived at the apartment they found Osorio on the balcony covered in blood from head to toe. *Id.* at 116. The police found blood throughout the apartment. *Id.* at 108, 111.

Following his convictions by jury verdict, on August 13, 2001, Applicant was sentenced to thirty-four years of imprisonment. *Record* v. X at 32.  Applicant appealed his conviction to the Colorado Court of Appeals ("CCA") and raised two issues: (1) the trial court erred in admitting prior act evidence and in not giving a limiting instruction to the jury; and (2) there was insufficient evidence of the "after deliberation" element necessary to convict Applicant of attempted first degree murder.  *Answer* [#15] Appx. B.   Applicant's convictions were affirmed by the CCA.  *People v. Osorio*, No. 01CA1833 (Colo. App. May 29, 2003) (unpublished opinion) (*Osorio I*).  Applicant's petition for a writ of certiorari was denied by the Colorado Supreme Court on November 10, 2003.  *Answer* [#15] Appx. G.

On March 18, 2004, Applicant filed a "Motion for Modification of Mandatory Sentence for Violent Crime Pursuant to § 18-1.3-406, 6 C.R.S. (2003), and for Sentence

Reconsideration Pursuant to Crim. P. 35(b)." *Record* v. I at 180.   The motion was denied by the trial court on November 12, 2004. *Id.* at 223.

On January 28, 2005, Applicant filed a Petition for Postconviction Relief Pursuant to Crim. P. 35(c) in Denver County District Court. *Id.* at 228.  Applicant alleged that he was denied the effective assistance of trial counsel. Specifically, Applicant asserted the following errors by his counsel: (1) failure to investigate the case; (2) failure to pursue exculpatory evidence; (3) failure to put forth a defense; and (4) failure to properly advise Applicant of the right to testify and denial of the right to testify. *Id.* at 233-49.   On April 22, 2005, the court denied Applicant's petition. *Id.* at 1.

Applicant appealed to the CCA, presenting one issue for review: whether the district court erred in denying Applicant's Rule 35(c) motion without appointing counsel or holding an evidentiary hearing. *Motion* [#15] Appx. I.  The CCA affirmed the denial of the Rule 35(c) motion, holding that Applicant was not entitled to an evidentiary hearing or the appointment of counsel because his ineffective counsel claim was without merit. *People v. Osorio*, 170 P.3d 796 (Colo. App. 2007) (*Osorio II*).  Applicant's petition for writ of certiorari was denied by the Colorado Supreme Court on November 19, 2007. *Motion* [#15] Appx. M.

The Application for a Writ of Habeas Corpus was filed in this Court on March 5, 2008 and raises the following grounds for relief: (1) the trial court erred when it allowed prejudicial evidence without a limiting instruction to the jury; (2) there was insufficient evidence to support the "after deliberation" element of the attempted first degree murder charge; and (3) trial counsel was ineffective for failing to properly investigate and offer a proper defense. *Application* [#4] at 5-6.

4

II.    Analysis

A.    Applicant's Status

Applicant is proceeding *pro se*.  Therefore, the Court must construe his Application liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status.  *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993).  However, the Court is not the nonmoving party's advocate and must nevertheless deny an application that is based on vague or conclusory allegations.  *Hall*, 935 F.2d at 1110.

B.    Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court."  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).  A decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent.  *Williams*, 529 U.S. at 406.  A decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue.  *Id.* at 409.  In addition, pursuant to this Court's habeas review, a presumption of correctness exists regarding trial and appellate court findings of fact.  *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982).  As such, Applicant bears the burden of rebutting this presumption "by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

      C.    Exhaustion of Remedies and Procedural Default

      Before an application for a writ of habeas corpus may be considered, the Applicant must have exhausted all available state remedies. 28 U.S.C. § 2254(b). "The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). The state and federal courts have concurrent power to "guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citation omitted). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 8383, 842 (1999).

      In order to meet the exhaustion requirement, the claim advanced by the federal habeas petitioner must have been submitted to the state courts as one arising under the federal constitution. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). The decision of the last state court to which the petitioner submitted his claims must fairly appear to rest on issues of federal law or to be interwoven with federal law. *Id.* In *Duncan v. Henry*, 513 U.S. 364, 366 (1995), the Supreme Court recognized that an applicant must alert the state court to the federal constitutional nature of his claims in order to properly exhaust his claims. That is, "mere similarity of claims is insufficient to exhaust," and "[i]f a habeas petitioner wishes to claim that [a ruling] at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court,

6

but in state court." *Id.* "[T]he substance of a federal habeas corpus claim must first be presented to the state courts in a manner which alerts the state courts to the fact that the defendant is raising federal constitutional issues and not simply issues of state law." *Huynh v. Archuleta*, No. 06-cv-02118-CMA-CBS, 2009 WL 798846, at *4 (D. Colo. Mar. 24, 2009).

Respondents concede that Plaintiff has exhausted Claims One and Two. *Answer* [#15] at 8-11. However, Respondents assert that Applicant's Claim Three, ineffective assistance of counsel, was only partially exhausted. In his third claim, Applicant alleges that his trial counsel was ineffective for failing to properly investigate, and for failing to offer a proper defense. *Application* [#4] at 5. According to Plaintiff,

> There were numerous instances that required investigation, that trial counsel failed to look into. The defendant asked his counsel to pursue a defense other than self defense, because the court was allowing evidence of prior bad acts, that would be brought to light if [Applicant] has to take the stand. The counsel insisted that the self defense defense would work.

*Id.*

As a preliminary matter, Respondents note that Plaintiff's Application does not cite federal law or the Constitution to support Claim Three. However, by stating that his claim was for "ineffective assistance of counsel," Applicant has effectively informed the court of the nature of his federal constitutional claim. Moreover, because Applicant is proceeding *pro se*, the Court liberally construes his Application. Therefore, I find that the Applicant adequately cited a violation of a federal constitutional right.

Applicant's claim has two components: (1) that his counsel failed to offer a proper defense; and (2) that counsel failed to properly investigate. *Application* [#4] at 6. Applicant did not raise the failure to investigate in his motion for postconviction relief. *Record* v. I at 228. On appeal of the denial of his motion for postconviction relief to the CCA, Applicant

7

contended that his counsel was ineffective "for failing to investigate whether defendant has a prior arrest for domestic violence and, if so, failing to ascertain  whether the prior arrest could be used for impeachment purposes." *Osorio II*, 170 P.3d at 801.  Because Applicant has not raised the issue in his Crim. P. 35(c) motion, the CCA refused to consider the claim.  *Id.; see also People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) (allegations not raised in Crim. P. 35(c) motion not cognizable on appeal).

On habeas review, the federal court will not consider issues that have been defaulted in state court on an independent and adequate state procedural ground. *Hickman v. Spears,* 160 F.3d 1269, 1271 (10th Cir. 1998).  A state procedural ground is independent if it relies on state law as the basis for its decision.  *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998).  For a state ground to be adequate it must be "strictly or regularly followed" and "evenhandedly applied to all similar claims."  *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982). Colo. R. Crim. P. 35(c) is an adequate and independent state ground. *Huynh*, 2009 WL 798846, at *12; *Holloman v. Ortiz,* 06-01226-WYD, 2009 WL 798836, at *12 (D. Colo. Mar. 24, 2009). Therefore, pursuant to *Hickman,* Applicant has procedurally defaulted this claim.

To obtain federal habeas review of procedurally defaulted claim, the Applicant must show cause for the failure to comply with state court procedures and that prejudice will result if the defaulted claim is not considered by the Court.  *House v. Bell*, 547 U.S. 518, 536 (2006).  Applicant has not alleged cause and prejudice for his procedural default. Accordingly, the Court will not consider his claim that his counsel failed to investigate.

In contrast, Applicant did present his claims that counsel was ineffective for failing to pursue a proper defense on appeal of the denial of his motion for postconviction relief.

8

*Osorio II* at 798. The CCA reached the merits of this claim. *Id.* at 799. Therefore, Applicant has exhausted this claim and the Court will consider Applicant's argument that his trial counsel failed to present a proper defense.

> D.   Claim One:  Admission of Prior Acts Evidence

Applicant claims that he was denied due process and a fair trial because the trial judge allowed the admission of prior uncharged conduct by Applicant and because the trial judge did not give a limiting instruction to the jury. *Application* [#4] at 5.  Prior to trial, the prosecution filed a Notice of Intent to Present Evidence of Other Acts or Transactions of Domestic Violence. *Record* v. I at 25.   The prosecution argued that three prior acts committed by Applicant were admissible to show motive, intent, modus operandi, and common scheme under Colorado Rev. Stat. §18-6-801.5. *Id.*  The prior acts were the following: (1) in March 2000,  Applicant was driving with the victim and the victim suggested that she wanted to terminate their relationship.   Applicant became very upset and drove erratically at an unsafe speed. He told the victim that was planning to crash the car and kill them both; (2) in February or March 2000, Applicant became upset about the extent of the victim's clothing purchases and struck her in the mouth; and (3) On May 8, 2000, Applicant became upset about the victim's request that she be allowed to spend time with a friend. He demanded that the victim return her engagement ring.  Applicant cut her lip when he struck the glass of wine from which she was drinking. *Id.* at 26-27.

The trial court ruled that the evidence was admissible. *Record* v. IV at 16.  The court noted that each incident involved the victim's desire to end her relationship with Applicant or situations where Applicant became angry at the victim for conduct he did not approve of. *Id.* at 14.  The court found that the incidents were material to the charged conduct and

admissible to show intent, motive, and modus operandi. *Id.*  Finally, the court ruled that

the probative value of the evidence outweighed its prejudicial effect. *Id.* at 15-16.

The CCA agreed. *Osorio I* at 6.

"As a general matter, federal habeas corpus relief doe not lie to review state law

questions about the admissibility of evidence ..." *Moore v. Marr*, 254 F.3d 1235, 1246 (10th

Cir. 2001).  State court evidentiary rulings are subject to considerable deference and a

federal court "may not provide habeas relief ... unless [those rulings] rendered the trial so

fundamentally unfair that a denial of constitutional rights results." *Duckett v. Mullin*, 306

F.3d 982, 999 (10th Cir. 2002)(internal quotations omitted).  Absent a showing that the

admission of evidence violated a specific constitutional right, the federal habeas court will

not disturb the state court's evidentiary ruling unless it was "so grossly prejudicial that it

fatally infected the trial and denied the fundamental fairness that is the essence of due

process." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting *Williamson v. Ward*,

110 F.3d 1508, 1522 (10th Cir. 1997).

A federal habeas court "will not disturb a state court's admission of prior crimes,

wrongs or acts unless the probative value of such evidence is so greatly outweighed by the

prejudice flowing from its admission that the admission denied defendant due process of

law." *Hopkinson v. Shillinger*, 866 F.2d 1185, 1197 (10th Cir. 1989), *overruled on other

grounds by Sawyer v. Smith*, 497 U.S. 227 (1990).  The Supreme Court has never held

that the admission of prior acts evidence violates due process.  *See Estelle v. McGuire*,

502 U.S. 62, 75 (1991) (declining to hold that admission of prior-injury evidence violated

due process); *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (rejecting argument that due

process requires exclusion of prejudicial evidence, e.g, prior convictions).

10

The CCA made the following ruling regarding the prior acts evidence:

> Contrary to defendant's assertion, we agree with the trial court that evidence of the prior incidents was relevant to show his motive. <u>See</u> <u>People v. Hulsing</u>, 825 P.2d 1027, 1030 (Colo. App. 1991) ("[i]n homicide cases involving marital partners, any fact or circumstance relating to ill-feeling, ill-treatment, jealousy, prior assaults, personal violence, threats, or any similar conduct or attitude by one spouse against the other is relevant to show motive and malice"); <u>People v. Raglin</u>, 21 P.3d 419, 424 (Colo. App. 2000) (the rationale of <u>Hulsing</u> is applicable under § 18-6-801.5 in domestic violence cases where the defendant and the victim are not married, but have engaged in an intimate relationship).
>
> Furthermore, the record supports the trial court's finding that this evidence has relevance independent of the prohibited inference and that its probative value was not substantially outweighed by the danger of unfair prejudice. Accordingly, we perceive no abuse of discretion in the trial court's decision to admit it.

*Osorio I* at 6-7.

The CCA's decision was not contrary to federal law or objectively unreasonable. Further, its findings do not appear to be based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d).  The admission of the prior acts evidence did not render Applicant's trial fundamentally unfair.

Applicant also argues that the trial court violated Colo. Rev. Stat. § 18-6-801.5 & 6 when it admitted the prior acts evidence without a limiting instruction to the jury. *Application* [#4] at 5.  Prior to trial, Applicant's counsel indicated that was not requesting a limiting instruction because it would unduly emphasize the evidence to the jury. *Record* v. 4 at 18.  At trial, the defense offered no objection to the lack of a limiting instruction.  *Answer* [#15] Ex. B at 17.

As a preliminary matter, "errors in jury instructions in a state criminal trial are not

reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citations omitted).   To obtain relief, a habeas application must demonstrate that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibble*, 431 U.S. 145, 154 (1977).   Moreover, due to counsel's failure to object in this case, the court is restricted to plain error review. *Hunter v. State of New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

Applicant is not entitled to federal habeas relief on this claim.   First, Applicant raises this limiting instruction issue solely as a violation of a Colorado statute.   "[F]ederal habeas relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).   It is not "the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle*, 502 U.S. at 68.   Moreover, even if the alleged error committed by the trial court was a constitutional one, Applicant has not demonstrated that the error had "a substantial and injurious effect in determining the jury's verdict," as required under the plain error standard of review. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).   Accordingly, the trial court's failure to offer a limiting instruction on the prior act evidence did not deprive Applicant of due process or a fair trial.

      E.     Claim Two:  Sufficiency of Evidence on "After Deliberation"
                              Element of Offense

12

In Claim Two, Applicant asserts that there was insufficient evidence to support the "after deliberation" element of the attempted first degree murder charge. *Application* [#4] at 6. He asserts that he was deprived of due process and a fair trial because "the State failed to prove beyond a reasonable doubt that the [Applicant] committed the offense as charged." *Id.*

"Sufficiency of the evidence is a mixed question of law and fact." *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006). The reviewing court asks "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under 28 U.S.C. § 2254(d), a federal habeas court must determine whether the facts are correct and the law was properly applied to the facts. *Maynard*, 468 F.3d at 673. The determination of a factual issue by a state court is presumed to be correct and the applicant has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Applicant was charged and convicted of attempt to commit the crime of first degree murder, in violation of Colo. Rev. Stat. § 18-3-102-(1)(a). *Record* at 1. Under Colorado law, "[a] person commits the crime of murder in the first degree if [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or another person." Colo. Rev. Stat. § 18-3-102(1)(a). Colorado's criminal attempt statute provides that,

> A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of

13

the firmness of the actor's purpose to complete the commission of the offense. Factual or legal impossibility of committing the offense is not a defense if the offense could have been committed had the attendant circumstances been as the actor believed them to be, nor is it a defense that the crime attempted was actually perpetrated by the accused.

Colo Rev. Stat. § 18-2-101(1).

"The term 'after deliberation' means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning an act.  An act committed after deliberation is never one which has been committed in a hasty or impulsive manner."  Colo. Rev. Stat. §18-3-101(3).

In reviewing the evidence on direct appeal, the CCA applied the *Jackson v. Virginia* standard and found the evidence sufficient based on the  following facts:

> The victim, defendant's girlfriend, arrive at the apartment she shared with the defendant to discuss the dissolution of their relationship and defendant's plans to move out of the apartment. As defendant and the victim began to argue, a friend of the victim phoned the victim about moving into the apartment after defendant moved out. When defendant overheard the victim speaking on the phone, he became infuriated and began cursing at the victim's friend. The victim hung up the phone.
>
> When the phone rang a second time, defendant tried to answer it, and the victim pushed him out of the way. Defendant told the victim she "shouldn't have done that," and he pulled from his pocket a folding knife and opened it to reveal the blade.
> …
> Defendant pulled the victim's head back and placed the knife to her throat. The victim grabbed the knife and pushed it away. Defendant stabbed the victim in the back. He then pushed her down and pulled the knife out of her back. He repeatedly tried to stab her, but the victim was able to grab the blade to protect herself.
>
> Defendant followed the victim into another room and confronted her again. He began inflicting superficial cuts to his own neck and arms. As the victim ran toward the balcony, defendant stabbed her in the back again. The victim stood on the balcony as defendant "pac[ed] back and forth between the balcony and the living room" of the apartment.

When the victim started to climb to the balcony of an adjoining apartment, defendant attempted to stab her in the throat. The victim told defendant she was dying and suggested they could still "work it out." Defendant replied that it was "too late for that" and again tried to stab her in the throat. The victim grabbed the blade of the knife with her hand, deeply cutting a finger. She succeeded in climbing to the next balcony and eventually found a neighbor, who protected her and called the police.

*Osorio I* at 2-4.

Applicant has failed to carry his burden of rebutting the presumption that the state court's determination of a factual issue is correct.  The CCA applied the correct standard of review.  Its determination was not unreasonable or contrary to clearly established law.

F.     Claim Three:  Ineffective Assistance of Counsel

Applicant's Claim Three asserts that his trial counsel was ineffective for failure to offer a proper defense.  *Application* [#4] at 6.  In denying Applicant relief on this claim, the CCA applied the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Osorio II* at 799.  Under *Strickland,* to establish ineffectiveness of counsel, Applicant must show (1) that his counsel's actions fell below an objective standard of reasonableness, and (2) that the attorney's conduct prejudiced the proceedings such that, but for counsel's errors, the outcome of the proceedings would have been different.  *Id.* at 687. "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.   For counsel's performance to be constitutionally ineffective, "it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Applicant alleges that his trial counsel was ineffective for pursing a self-defense theory.  He claims that he "asked his counsel to pursue a defense other than self defense,

15

because the court was allowing evidence of prior bad acts, that would be brought to light if he had to take the stand, which a self defense defense would require to be believable." *Application* [#4] at 6.  Applicant also alleges that his "trial counsel insisted that the self defense defense would work."  *Id.*

To succeed on his ineffective assistance of counsel claim, Applicant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.  The deference to an attorney's strategic trial decision will stand unless the decision itself is unreasonable.  *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002).  "Where it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'"  *United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock*, 297 F.3d at 1044).

Given the facts of the case, presenting a self-defense theory was a reasonable trial strategy.  This was a domestic violence case involving the Applicant and the victim.  It involved a physical confrontation between the two. There were no other witnesses to the stabbing.  Other than simply denying his guilt, Applicant's only possible strategy was self-defense.  Applicant states that a self-defense claim would  have required him to testify at trial.  As the CCA observed, this assertion "makes no sense given that [Applicant] did not testify." *Osorio II* at 800.  Moreover, Applicant's prior acts would have been admitted no matter what type of defense Applicant's counsel pursued at trial.

The Court should accord highly deferential treatment to counsel's conduct and decline to embrace the distorting effect of hindsight.  *Strickland*, 466 U.S. at 689.  Applicant has not rebutted the presumption that counsel's decision to pursue a self-defense theory

16

was a sound trial strategic decision.  Therefore, he is not entitled to relief on his ineffective assistance of counsel claim.

      G.     Evidentiary Hearing

Under 28 U.S.C. § 2254(e)(2), for an Applicant to obtain an evidentiary hearing in a federal habeas court, he must show (1) that he was diligent in developing the factual basis for the claim in state court, *Williams v. Taylor*, 529 U.S. 420, 429-31 (2000), and (2) a factual basis that, if true, would entitle him to relief.  *Mayes v. Gibson*, 210 F.3d 12284, 1287 (10th Cir. 2001).  "This means [Applicant] must show that, taking his allegations as true, he would prevail on his claim."  *Boyle v. McCune*, 544 F.3d 1132, 1135 (10th Cir. 2008).  An evidentiary hearing is unnecessary if the claim can be resolved on the existing record.  *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005).

The only claim of Applicant's that could plausibly involve a evidentiary hearing would be the ineffective assistance of counsel issue.   However, because Applicant would not be entitled to relief even if his allegations regarding counsel were true, he still would not be entitled to a evidentiary hearing on the claim.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").   I find that an evidentiary hearing is not necessary because the ineffective assistance of counsel  claim is without merit and can be resolved on the existing record.

III. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief pursuant to 28 U.S.C. § 2254. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court RECOMMENDS that the  Application

17

for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that this case be dismissed with prejudice.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 30, 2009

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge